```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**COMMERCIAL BUILDERS, INC.**
**OF WEST VIRGINIA,**
**a West Virginia corporation,**

    **Plaintiff and**
    **Counterclaim Defendant,**

**v.**                                        **CIVIL ACTION NO. 1:20cv62**
                                                     **(Judge Keeley)**

**MCKINNEY ROMEO PROPERTIES, LLC, a**
**Pennsylvania Limited Liability Company,**

    **Defendant and**
    **Counterclaim Plaintiff.**

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD**
**CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

In this breach of contract case, the defendant, McKinney Romeo Properties, LLC ("McKinney"), has asserted counterclaims for breach of contract, breach of warranty, and fraud against the plaintiff, Commercial Builders, Inc. of West Virginia ("Commercial") (Dkt. No. 28). Pending is Commercial's motion to dismiss McKinney's fraud claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 31). For the reasons that follow, the Court **GRANTS** the motion to dismiss (Dkt. No. 31) and **DISMISSES** the fraud claim in McKinney's second amended counterclaim **WITH PREJUDICE.**

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**                          **1:20CV62**

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

### I. BACKGROUND

**A.   Procedural History**

On January 31, 2020, Commercial sued McKinney in the Circuit Court of Monongalia County, West Virginia, alleging that it had breached two contracts associated with the construction of a Honda automobile dealership. McKinney timely removed the matter based on diversity jurisdiction, answered the complaint, and asserted counterclaims against Commercial for breach of contract, breach of warranty, and fraud.

Commercial moved to dismiss the fraud claim on April 30, 2020, based on McKinney's failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). On May 12, 2020, the parties stipulated that McKinney could amend its answer and counterclaim, and that Commercial's pending motion to dismiss was moot.

McKinney filed its first amended answer on May 14, 2020, and again asserted counterclaims against Commercial for breach of contract, breach of warranty, and fraud. After Commercial moved to dismiss the fraud claim, the Court heard argument on this motion on July 1, 2020. At the hearing, the Court granted McKinney leave to file a second amended counterclaim, which it did on July 13, 2020.

2

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**                                  **1:20CV62**

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

Commercial then filed the instant motion to dismiss the fraud claim on August 3, 2020.

### B. McKinney's Second Amended Counterclaim

Each count of McKinney's second amended counterclaim, including the fraud claim, concerns the "Standard Form of Agreement Between Owner and Contractor" (the "AIA Contract") it executed with Commercial on or about December 12, 2017 (Dkt. No. 28 at ¶ 8). Under this contract, Commercial "agreed to construct a building for McKinney [] intended for use as a new and used Honda dealership." Id. at ¶ 9. Later, Commercial and McKinney entered into a second contract,[1] as part of which Commercial agreed "to perform site work associated with the building construction specified in the AIA Contract." Id. at ¶ 10.

The fraud claim alleges that Commercial "knowingly and deliberately misrepresented to Mills Group"[2] and McKinney that work under certain portions of the construction contract had been

---

[1] Both of these contracts were attached to McKinney's Second Amended Counterclaim (Dkt. Nos. 28-1, 28-2).

[2] McKinney retained Mills Group, LLC to independently evaluate and approve and certify Commercial's applications for payment under the AIA Contract (Dkt. No. 31 at 6). Mills Group certified and approved these payment applications even though it did not conduct the on-site observations described in its signed certifications (Dkt. No. 28 at ¶¶ 25, 26).

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**  1:20CV62

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

performed, although the work was incomplete or had been done in an unworkmanlike manner. Id. at ¶ 20. McKinney alleges that Commercial made these misrepresentations throughout the construction project and for the purpose of procuring unearned payments. Id. A "non-exhaustive list" of the defects and deficiencies for which Commercial is allegedly responsible includes:

> Extensive and recurring water intrusion in the Dealership showroom, offices, and main entrance;
> Inadequate structural support for the Honda wave canopy;
> Improper discharge of sanitary lines into a storm sewer catch basin;
> Inadequate structural support for showroom light fixtures;
> Improperly installed roof parapet guttering and downspouts;
> Severe wall cracking;
> Building code violations; [and]
> Electrical code violations.

Id. at ¶ 13.

McKinney also alleges that it relied on Commercial's representations that it had paid subcontractors and materialmen, even though such payments were not made. Id. at ¶ 21. McKinney contends that Commercial made these misrepresentations when it applied for payment from McKinney and Mills Group via electronic mail. Id. at ¶ 22. It attached a partial listing of Commercial's "fraudulent payment applications" to its second amended

4

Case 1:20-cv-00062-IMK Document 40 Filed 12/02/20 Page 5 of 20 PageID #: 403

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO** 1:20CV62

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

counterclaim and quoted the notarized "Contractor's Certification" accompanying each payment application. Id. at ¶¶ 23-24.

McKinney also alleges that a Mills Group architect would sign and certify Commercial's payment applications, even though Mills Group did not conduct the required on-site observations associated with the payments. Id. at ¶¶ 25-26. According to McKinney, after obtaining certification from Mills Group, Commercial emailed its payment applications to McKinney's construction lender and mortgagee, First United Bank & Trust Co. ("First United"), which in turn paid Commercial. Id. at ¶ 27.

McKinney also accuses Commercial of committing bank fraud and wire fraud in violation of 18 U.S.C. §§ 1344 and 1343, respectively. Id. at ¶¶ 31, 32. It further alleges that Commercial received $212,004.00 from First United after executing a fraudulent mechanic's lien release affidavit ("MLR"). Id. at ¶¶ 33, 34. In support, McKinney claims it was sued by a subcontractor, American Glass and Mirror Co. ("American Glass"), and contacted by a supplier, J.W. McDougall Co. ("J.W. McDougall"), neither of whom had been paid by Commercial despite Commercial's representation otherwise in the MLR. Id. at ¶¶ 35-42.

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO** 1:20CV62

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

## II. STANDARD OF REVIEW

A defendant may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the ground that a complaint does not "state a claim upon which relief may be granted." When reviewing the sufficiency of a complaint, the district court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In order to be sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

6

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**　　　　　　　　　　　　**1:20CV62**

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD**
**CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999); Dunn v. Borta, 369 F.3d 421 (4th Cir. 2004).

"A motion to dismiss tests the sufficiency of a complaint, and [the court's] evaluation is thus generally limited to a review of the allegations of the complaint itself." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). "However, [the court] also consider[s] documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits." Goines v. Valley Cmt. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**                                   1:20CV62

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

### III. DISCUSSION

**A. Timeliness of Commercial's Motion**

The Court considers first the timeliness of Commercial's motion. Because Commercial filed its motion to dismiss eleven days after the deadline set by the Court to do so (Dkt. No. 26), McKinney contends the motion is untimely and should be denied under Federal Rules of Civil Procedure 16(f)(1)(C) and 37(b)(2)(A)(ii) (Dkt. No. 32). Contending that the Court's orders must be enforced if they are to have meaning, McKinney cites Commercial's failure to obtain or seek leave from the Court to file its motion out of time. Id. Commercial never responded to this argument.

Although Commercial technically was untimely in filing its motion to dismiss, McKinney makes serious, even criminal, allegations in its fraud claim that warrant a discussion on the merits of Commercial's motion. See, e.g., Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010) ("[The Fourth Circuit has] repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits.").

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**                                           **1:20CV62**

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

**B. Fraud Claim in McKinney's Second Amended Counterclaim**

McKinney alleges fraud in two forms. It first alleges that Commercial submitted materially false progress payment applications to McKinney, Mills Group, and First United. Next, it argues that Commercial exchanged a fraudulent lien waiver and release for $212,004.00 in construction loan proceeds (Dkt. No. 28 at ¶¶ 20-32, 33-43).

Commercial contends that McKinney's fraud claim should be dismissed for failure to meet Fed. R. Civ. P. 9(b)'s heightened pleading standard for fraud (Dkt. No. 31). Substantively, Commercial argues that McKinney's fraud claims do not sweep beyond the scope of a typical breach of contract case. Id. at 6 (citing Murphy v. Capella Educ. Co., 589 Fed. Appx. 646 (4th Cir. 2014)). The Court will address this latter issue first.

**1. Gist of the Action Doctrine**

Even when all reasonable factual inferences are drawn in McKinney's favor, it is apparent that its tort allegations of fraud are based solely on its contractual relationship with Commercial. The gist of the action doctrine "prevent[s] the recasting of a contract claim as a tort claim." Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP, 231 W. Va. 577, 586, 746 S.E.2d 568, 577

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO** 1:20CV62

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

(2013). Under West Virginia law, this bar to suing in tort on a breach of contract matter applies if any one of the following four factors is present:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

Covol Fuels No. 4, LLC v. Pinnacle Min. Co., LLC, 785 F.3d 104, 115 (4th Cir. 2015) (quoting Gaddy, 231 W. Va. at 586, 746 S.E.2d at 577).

Here, McKinney's fraud allegations concern Commercial's alleged contractual non-performance[3] and misrepresentations regarding its work made to McKinney's architect and mortgage lender. Importantly, pursuant to the AIA Contract, Commercial was required to submit any applications for payment to McKinney's architect, Mills Group (Dkt. No. 28-1 at § 5.1.1). Also, under the

---

[3] The focus of McKinney's fraud claim is evident in its own pleading. Specifically, McKinney alleges, "throughout the Project, and for the purpose of procuring unearned progress payments, [Commercial] knowingly and deliberately misrepresented to Mills Group and to [McKinney] that certain portions of the **AIA Contract** and the **Site Agreement** were performed when such **performance had not occurred or had not occurred in a workmanlike manner**." (Dkt. No. 28 at ¶ 20) (emphasis added).

10

Case 1:20-cv-00062-IMK   Document 40   Filed 12/02/20   Page 11 of 20 PageID #: 409

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**                              **1:20CV62**

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

contract terms, Mills Group was responsible for issuing certificates for payment. Id. McKinney then was required to make progress payments to Commercial based on both the applications and certificates for payment. Id. At bottom, not only do McKinney's fraud allegations relate to the two contracts between it and Commercial, but any duties allegedly breached were those arising out of and defined by these contracts.

### 2.   Pleading Standard Under Rule 9(b)

Even if McKinney's fraud allegations were not barred by the gist of the action doctrine, which the Court finds dispositive, they fail to allege with particularity the content of the fraudulent statements purportedly made by Commercial about the progress of its work, and about its payments to subcontractors made from the funds received in exchange for the MLR.

Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Further, the United States Court of Appeals for the Fourth Circuit has noted that the "'circumstances' required to be pled with particularity under Rule 9(b) are 'the

11

Case 1:20-cv-00062-IMK Document 40 Filed 12/02/20 Page 12 of 20 PageID #: 410

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO** 1:20CV62

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (internal citations omitted). However, courts "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial rediscovery evidence of those facts." Id.

The essential elements of fraud under West Virginia law include: (1) the alleged fraudulent act is that of the defendant; (2) the act was material, false, and the plaintiff justifiably relied upon it; and (3) the plaintiff was injured as a result of the act. Ashworth v. Albers Med., Inc., 410 F.Supp.2d 471, 477 (S.D. W. Va. 2005) (citing Lengyel v. Lint, 167 W. Va. 272, 280 S.E.2d 66, 67 (W. Va. 1981)). "Actual fraud, or fraud involving guilt, is defined as anything falsely said or done to the injury of property rights of another." Stanley v. Sewell Coal Co., 169 W. Va. 72, 76, 285 S.E.2d 679, 682-83 (1981) (citing Hulings v. Hulings Lumber Co., 38 W. Va. 351, 18 S.E. 620 (1893)). "Actual fraud is intentional, and consists of intentional deception to induce

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**                                                    **1:20CV62**

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

another to part with property or to surrender some legal right, and which accomplishes the end designed." Stanley, 169 W. Va. at 76, 285 S.E.2d at 683.

        **a.**    **Fraudulent Applications for Payment**

In its counterclaim, McKinney alleges that Commercial "knowingly and deliberately misrepresented to Mills Group and to McKinney" that portions of the contracts were performed "when such performance had not occurred or had not occurred in a workmanlike manner." (Dkt. No. 28 at ¶ 20). Throughout this case, and including in its second amended counterclaim, McKinney argues that Commercial falsely represented full performance under the contract. However, McKinney fails to state with particularity what Commercial misrepresented when it applied for payment. McKinney attached to its second amended counterclaim a spreadsheet listing such issues as "roof leaks, wave issue, cylinder leaks, window leaks, etc." and included columns representing the different payment applications Commercial made to it (Dkt. No. 28-3). However, this exhibit is silent regarding which misrepresentations constitute fraud. Without a description of the actual misrepresentations made by Commercial regarding this work, McKinney has not plausibly alleged that Commercial intended to deceive it.

13

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**                                              **1:20CV62**

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

        **b.    Mechanic's Lien Release**

McKinney's allegations related to the MLR likewise fail to state a claim. First, McKinney's allegations do not specify that the payments owed to American Glass and J. W. McDougall were due from the payment remitted to Commercial in exchange for the executed MLR. This allegation is critical to the viability of McKinney's fraud claim because Commercial promised in the MLR that it "has paid and satisfied, or will pay and satisfy [all its subcontractors] with *the funds received from the Payment*[4]" (Dkt. No. 28-4 at 2)[5] (emphasis added). Indeed, the payment application exhibit attached to McKinney's Second Amended Counterclaim shows that additional payments were requested and remitted to Commercial after the MLR was executed on April 17, 2019 (Dkt. No. 28-3 at 7-8) (showing payment applications made for periods ending April 30, 2019 and May 31, 2019).

---

[4] The MLR defines "Payment" as "Two Hundred Twelve Thousand Four Dollars and 00/100" (Dkt. No. 28-4 at 1).

[5] In the remainder of this paragraph, Commercial promises to "absolutely, irrevocably, and unconditionally defend, indemnify, protect, and hold [McKinney and First United] . . . harmless against, from, and of any and all actions . . . causes of action . . . demands . . . judgments, liabilities, [and] liens . . . accruing from . . . and/or resulting from [Commercial's] failure, neglect, and/or refusal to completely and fully pay and satisfy each and every Subcontractor." (Dkt. No. 28-4 at 2).

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**                      **1:20CV62**

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

Moreover, even if American Glass and J.W. McDougall were to be paid from the funds Commercial received in exchange for the MLR, McKinney's fraud allegations related to the MLR concern a promise to perform, which, as a matter of law in West Virginia, cannot give rise to a fraud claim. The MLR states "that [Commercial] has paid and satisfied, or *will* pay and satisfy with the funds received from the Payment, all Subcontractors." (Dkt. No. 28 at ¶ 36) (emphasis added). But, "fraud cannot be predicated on a promise not performed." Syl Pt. 1, Love v. Teter, 24 W. Va. 741 (1884); Syl. Pt. 3, Croston v. Emax Oil Co., 195 W. Va. 86, 464 S.E.2d 728 (1995). As explained by the Supreme Court of Appeals of West Virginia in Croston:

> [A]ctionable fraud must ordinarily be predicated upon an intentional misrepresentation of a past or existing fact and not upon a misrepresentation as to a future occurrence. Somewhat similarly, it cannot be based on statements which are promissory in nature or which constitute expressions of intention, unless the non-existence of the intention to fulfill the promise at the time it was made is shown.

Croston, 195 W. Va. at 90, 464 S.E.2d at 732 (1995).

In West Virginia "[t]here is generally no tort liability for nonfeasance, or failing to do what one has contracted to do, in the absence of a duty to act apart from the contract." Taz Hardwoods Co., Inc. v. Westchester Fire Ins. Co., No. 2:03-CV-93, 2006 WL

15

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO** 1:20CV62

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

8442780, at *7 (N.D. W. Va. Nov. 2, 2006) (citation omitted), report and recommendation adopted, No. 2:03-CV-93, 2007 WL 709322 (N.D. W. Va. Mar. 5, 2007). Indeed, "[a] breach of contract action cannot be turned into one sounding in tort merely because the Plaintiff[s] allege[] intent or bad faith on the part of the breaching party. The theory is still contractual in nature." Snuffer v. Motorists Mut. Ins. Co., 636 F. Supp. 430, 433 (S.D. W. Va. 1986).

Here, McKinney alleges that it "justifiably relied on [Commercial's] material, knowing[,] and purposely false representation in the [MLR] that all Project subcontractors, including without limitation American Glass and J.W. McDougall, *were* paid in full." (Dkt. No. 28 at ¶ 42) (emphasis added). Critically, however, both the MLR and McKinney's fraud allegations are silent about whether Commercial was bound to pay American Glass and J.W. McDougall from the Payment remitted to Commercial in exchange for the MLR. Moreover, it does not follow that, if Commercial intended to defraud McKinney by not paying its subcontractors, it would create contractual liability for itself in the form of an indemnity clause. Finally, although McKinney alleges it was damaged due to its reliance on Commercial's promise, such

16

Case 1:20-cv-00062-IMK Document 40 Filed 12/02/20 Page 17 of 20 PageID #: 415

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**                        **1:20CV62**

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

claims cannot form the basis of a fraud claim. Thus, McKinney's fraud claim in its second amended counterclaim fails to state a claim for fraud related to the MLR.

### 3. Violation of Statute

Finally, McKinney alleges that it is entitled to damages based on Commercial's violations of 18 U.S.C. § 1344 and 18 U.S.C. § 1343, and West Virginia's violation of statute law, W. Va. Code § 55-7-9. But this assertion ignores the fact that 18 U.S.C. §§ 1343 and 1344 have been widely held not to create a private right of action. See Tribble v. Reedy, 888 F.2d 1387 (4th Cir. 1989) (unpublished table decision) (finding no private cause of action under 18 U.S.C. § 1343 because it is a "bare criminal statute which gives no express indication of Congressional intent to create a civil remedy. The legislative history of the statute does not provide any basis for inferring a private right of action." (internal quotation marks omitted)). See also Lee v. McClellan, No. 3:97cv355-P, 1997 WL 882907, at *5 (E.D.N.C. Nov. 18, 1997), aff'd, 153 F.3d 720 (4th Cir. 1998) ("The criminal statutes cited by Plaintiffs . . . [including] 18 U.S.C. § 1344, expressly provide for criminal penalties, and no private cause of action exists under [it]."). Williams v. McKinney, Civil Action No. 6:06-3465-OFF-WMC,

Case 1:20-cv-00062-IMK Document 40 Filed 12/02/20 Page 18 of 20 PageID #: 416

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO**                                   **1:20CV62**

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

2008 WL 731124, at *4 (D.S.C. Mar. 18, 2008) ("[Neither 18 U.S.C. § 1343 (relating to wire fraud), [and] 18 U.S.C. § 1344 (relating to bank fraud) . . . provide for a private right of action.") (citing Bajorat v. Columbia-Breckenridge Dev. Corp., 944 F.Supp. 1371, 1377-78 (N.D. Ill. 1996) (numerous citations omitted)). Therefore, to the extent McKinney attempts to allege a private cause of action under §§ 1343 or 1344, that attempt fails as a matter of law.

McKinney also is not entitled to damages under W. Va. Code § 55-7-9, under which "[a]ny person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation." But no independent cause of action is created if the private cause of action intrudes "into an area delegated exclusively to the federal government." Syl. Pt. 1, in part, Hurley v. Allied Chem. Corp., 164 W. Va. 268, 262 S.E.2d 757, 758 (1980).[6]

---

[6] Hurley sets out four factors that must be met for a West Virginia substantive statute to create a private cause of action:

> (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of

18

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO** 1:20CV62

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

18 U.S.C. §§ 1343 and 1344 criminalize conduct related to fraudulent messages sent on interstate wires and fraudulent schemes perpetrated on federally guaranteed financial institutions. See U.S. v. Jacobs, 117 F.3d 82 (2d Cir. 1997); Bologna v. Allstate Ins. Co., 138 F.Supp.2d 310, 321-22 (E.D.N.Y. 2001). Because these statutes are entirely within the purview of the federal government, McKinney may not seek damages under W. Va. Code § 55-7-9.

### IV. CONCLUSION

For the reasons discussed, the Court **GRANTS** Commercial's motion to dismiss (Dkt. No. 31), and **DISMISSES** the fraud count of McKinney's second amended counterclaim **WITH PREJUDICE**. Further, it **DENIES AS MOOT** Commercial's motion to dismiss the fraud count of McKinney's first amended counterclaim (Dkt. No. 20).

---

the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

**COMMERCIAL BUILDERS V. MCKINNEY ROMEO** 1:20CV62

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO DISMISS FRAUD
CLAIM OF SECOND AMENDED COUNTERCLAIM [DKT. NO. 31]**

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: December 2, 2020

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE